IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THEODORE BENJAMIN VADEN,

        Petitioner,               No. CIV S-08-0178 FCD GGH P

    vs.

DARRELL G. ADAMS, et al.,

        Respondents.        FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction for two counts of assault with a deadly weapon on separate victims (Cal. Penal Code § 245(a)(1)), making criminal threats (Cal. Penal Code § 422), and misdemeanor unlawful touching (Cal. Penal Code § 243.4(e)(1)). Petitioner is serving a sentence of 15 years.

        The petition raises four claims: 1) violation of the right to a preliminary hearing; 2) jury instruction error; 3) ineffective assistance of appellate counsel; and 4) conviction obtained by use of perjured testimony. On January 16, 2009, respondent filed an answer. On January 28, 2009, petitioner filed a reply to respondent's answer. This brief raised a new claim alleging violations of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S.

1

1   296 (2004) and <u>Cunningham v. California</u>, 549 U.S. 270 (2007).  On February 26, 2009, the

2   court ordered respondent to file briefing addressing the <u>Apprendi</u>, etc., claim.  On March 18,

3   2009, respondent filed supplemental briefing.  On March 31, 2009, petitioner filed a reply to

4   respondent's supplemental briefing.

5          After carefully reviewing the record, the court recommends that the petition be

6   denied.

7   II.  <u>Anti-Terrorism and Effective Death Penalty Act</u>

8          The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

9   petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neeley v. Nagle</u>,

10  138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

11  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

12  standards of review to be used by a federal habeas court in assessing a state court's adjudication

13  of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

14  (9th Cir. 1997).

15         In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

16  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

17  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

18  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

19  "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

20  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

21  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

22  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

23         "Unreasonable application" of established law, on the other hand, applies to

24  mixed questions of law and fact, that is, the application of law to fact where there are no factually

25  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

26  <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

1  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

2  deference is not blindly automatic, "the most important point is that an *unreasonable* application

3  of federal law is different from an incorrect application of law....[A] federal habeas court may not

4  issue the writ simply because that court concludes in its independent judgment that the relevant

5  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

6  that application must also be unreasonable."  <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

7  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

8  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

9  authority.  <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).

10            The state courts need not have cited to federal authority, or even have indicated

11  awareness of federal authority in arriving at their decision.  <u>Early v. Packer</u>, 537 U.S. 3, 123 S.

12  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

13  contrary to, or an unreasonable application of, established Supreme Court authority.  <u>Id</u>.  An

14  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

15  occurred.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

16  established Supreme Court authority reviewed must be a pronouncement on constitutional

17  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

18  binding only on federal courts.  <u>Early v. Packer</u>, 537 U.S. at 9, 123 S. Ct. at 366.

19            However, where the state courts have not addressed the constitutional issue in

20  dispute in any reasoned opinion, the federal court will independently review the record in

21  adjudication of that issue.  "Independent review of the record is not de novo review of the

22  constitutional issue, but rather, the only method by which we can determine whether a silent state

23  court decision is objectively unreasonable."  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir.

24  2003).

25  /////

26  /////

III.  <u>Factual Background</u>

The opinion of the California Court of Appeal contains a factual summary.  After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

In July 2002, longtime friends Connie O. and Susan C. lived together in a trailer park in Sacramento County. Connie and Susan were prostitutes and occasionally walked the stroll together. At the time, both women were also regularly using drugs, however, both women have since graduated from a recovery home and moved to transitional housing where they participate in a drug rehabilitation program.

Connie had known defendant, whom she and Susan knew as "Teddy," for approximately six months. Defendant would stand on the boulevard and harass the prostitutes. Defendant was mean, seemed to be psychotic, and bullied people on the street. Defendant would also panhandle and try to get the girls to give him money. Defendant had come to Connie's trailer once or twice to do drugs but they were not friends and did not have a sexual relationship of any kind. Susan had never been friends with defendant.

On the evening of July 6, 2002, Susan was in her trailer with the front door open when an acquaintance named Debbie ran in. She was obviously drunk and was followed in by defendant, who was swinging a flashlight at Susan. Defendant also had a friend waiting outside the trailer. Defendant tried to corner Susan on the couch and said he and his friend were going to take all the "pussy" they wanted. Susan was able to dodge the swinging flashlight, and ran out of the front door and past defendant's friend. She got her bike and went to look for Connie.

Connie saw defendant in the driveway of the trailer park as he was leaving her trailer. Defendant had a steak knife and was with a friend. Defendant stopped Connie on her bicycle and asked her if she had any money, to which she responded she did not. Defendant also said he was tired of her making a lot of money that defendant could not have. He then told Connie that, if she called the police, he was going to cut her up so she could not work as a prostitute anymore. A car drove by and defendant allowed Connie to go home.

Later that night, Connie was in the trailer when defendant came over and spent 30 minutes attempting to get inside. Defendant had a small steak knife and someone else with him. Defendant told Connie that she would eventually have to come out of the trailer and that if she did not come out, he would come back. Connie called the police but they were not sympathetic and did not take a report. Susan had returned to the trailer by the time Connie called the police.

That night, Connie's former boyfriend, Daniel R., spent the night. Connie and Daniel slept in the bedroom while Susan slept on the couch in the front room. At approximately 7:00 a.m. the next morning, Connie was awakened by someone touching her vagina over her sweatpants. She thought it was Daniel touching her and either he or defendant asked, "do you want sex?" When Connie opened her

1  eyes, she saw defendant sitting on the side of the bed with his hands on her. She
   tried to kick him to get him away from her and tried to wake Daniel, who was
2  hard to wake. When Daniel finally awoke, he got in front of Connie. When Daniel
   confronted defendant, Connie saw defendant retrieve a knife from his backpack.
3  As defendant was threatening Daniel with a knife to Daniel's chest or throat,
   Connie ran out of the back door.
4
   Susan had also been awakened by the sound of Connie screaming at Daniel to
5  wake up. Susan grabbed a three-or four-foot pipe that she kept in the living room
   for protection and attracted defendant's attention to allow Connie to get away.
6  Defendant walked toward Susan in the living room and Susan saw that defendant
   was pointing a knife at her. Defendant said either, "I'll cut your fool head off" or
7  "Don't stand in my way, bitch. I will cut your head off." Susan was scared but, in
   order to allow Connie time to get away, responded by saying that her pipe was
8  bigger than his knife. Defendant left through the back door.

9  Connie had run to another trailer nearby and called police. Sacramento County
   Sheriff's Deputy Scott Swisher arrived within approximately two minutes of being
10 dispatched. When he arrived, Susan was talking very rapidly, was very nervous
   and appeared very fearful. Deputy Swisher spoke with both Susan and Connie,
11 and radioed defendant's description to other officers in the area. Defendant was
   apprehended a short time later.
12
13 Respondent's Lodged Document 8, pp. 2-5.

14 IV.  Discussion

15           A.  Denial of Right to Preliminary Hearing

16           Petitioner raised this claim in a habeas petition filed in the Sacramento County

17 Superior Court.  On February 8, 2007, the Superior Court issued an order denying this claim on

18 the merits.  See exhibits attached to petition.[1]  The California Court of Appeal denied petitioner's

19 habeas corpus petition without comment or citation on June 7, 2007.  Respondent's Lodged

20 Document 11.  The California Supreme Court denied petitioner's habeas petition without

21 comment or citation.  Respondent's Lodged Document 13.  Accordingly, the court considers

22 whether the denial of this claim by the Superior Court was an unreasonable application of clearly

23 established Supreme Court authority.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th

24

25           [1]  Respondent does not appear to be aware of this state petition although a file stamped
   copy of it is included in the packet of respondent's lodged documents identified by a cover sheet
26 stating "Exhibit A."

                                            5

Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

Petitioner alleges that his right to due process was violated when the charges against Susan Corbin were added two years and two months after the preliminary hearing.  The background to this claim is contained in the motion to set aside the information filed by petitioner's trial counsel:

> The defendant was charged by the complaint with violations of Section 459 and 245(a)(1) of the Penal Code on or about July 7th 200[2].
>
> On December 19, 2002, a preliminary hearing was held before the Honorable Jeffrey L. Gunther at which time testimony was taken in support of the complaint. At the conclusion of the preliminary hearing, a holding order was issued to the felony charges of violating Penal Code of California Sections 459 and 245(a)(1) upon Connie O and a charge of 245(a)(1) upon Daniel Raynor.  There was no holding order as to the alleged "victim" Susan Corbin.
>
> The case was subsequently set for jury trial and continued a number of times at the request of the prosecution due to the "illness of Susan Corbin" who was not a named "victim" in the case.
>
> On the eve of trial, the trial was again continued at the request of the prosecution to allow the prosecution to amend the complaint and consolidate the case with a new pending felony.  Consolidation naming a minor "victim" in a separate incident and an adult (Dorothy Fox-Contreras) in another separate incident was permitted over the objection of the defendant.  The case was again severed separating the case involving the minor upon motion by the defendant.
>
> Meanwhile, trial dates dragged on because prior to the consolidation, defendant was represented by different attorneys in each of the cases.  Once the cases were consolidated, the defendant was still represented by two different counsels; each handling different counts of the information.  To further complicate matters, the schedules of two defense attorneys had to be accommodated in addition to the deputy district attorney's schedule in order to get the case to trial.
>
> Next, Dorothy Fox-Contreras was arrested on several felony counts and the deputy district attorney needed additional time to provide defense counsel in the case herein with relevant discovery regarding Dorothy Fox-Contreras.
>
> Finally, approximately two years after the original complaint, the prosecution moved to amend and allege crimes against Susan Corbin in the July 7th event.  No preliminary hearing was held in regard to the charges alleging acts against Susan Corbin.

CT at 313-314.

1    In the motion to set aside the information, petitioner's trial counsel went on to

2 argue that amendment of the information violated petitioner's right to due process because he

3 was not permitted to cross-examine Corbin at the preliminary hearing.  CT at 315.  Counsel also

4 argued that because the original complaint did not allege acts against Corbin, counsel did not

5 prepare to defend against the new charges.  Id.  Counsel argued,

6        Cross-examination was not conducted with the thought of presenting an
         affirmative defense or any other defense against acts toward alleged victim
7        Corbin.  Witnesses that could have been subpoenaed in order to present such an
         affirmative defense were not called and did not testify.  Tactical decisions were
8        made with the knowledge that there were no charges against Corbin.  Thus the
         amendment had the effect of denying the defendant adequate representation at the
9        preliminary hearing in this matter.

10 CT at 315-316.

11        The Superior Court denied this claim for the following reasons:

12        Petitioner first claims there was no preliminary hearing held in the matter.

13        Not so.  Preliminary hearing was held in Case No. 02FO5733 on December 19,
          2002.  Petitioner may be confused with his other case, Case No. 03FO7717, in
14        which he waived preliminary hearing.

15        Petitioner then contradicts himself and admits that he had a preliminary hearing,
          but claims that he was denied the chance to cross-examine witnesses Corbin and
16        Raynor at the preliminary hearing, and that appellate counsel was ineffective in
          failing to raise the matter on appeal.

17
          Not so.  Although other witnesses testified at the preliminary hearing, Corbin and
18        Raynor were not called by either party, and defense counsel specifically stated no
          intention to call any witnesses at the preliminary hearing.  Regardless, petitioner's
19        rights simply were not violated.  Corbin and Raynor did both eventually testify at
          trial, and petitioner had ample opportunity to cross-examine each at that time.
20        The claim, therefore, is denied (In re Bower (1985) 38 Cal.3d 865).

21 See opinion of the Superior Court, attached as exhibit to petition.

22        In the answer, respondent correctly observes that there is no fundamental right to a

23 preliminary hearing.  Howard v. Cupp, 747 F.2d 510 (9th Cir. 1984).  For this reason, respondent

24 argues that petitioner's claim that his right to a preliminary hearing was violated regarding the

25 Corbin charges is without merit.

26 /////

1    While petitioner has no right to a preliminary hearing, he may also be raising a

2 claim that the last minute amendment to the information adding the Corbin charges violated his

3 right to due process.  The original felony complaint was filed against petitioner on July 9, 2002.

4 The preliminary hearing was held December 19, 2002.  The amended information, adding the

5 Corbin charges, was filed September 24, 2004.  Trial began on January 11, 2005.

6    "A person's right to reasonable notice of a charge against him, and an opportunity

7 to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence."  In

8 re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499 (1948). This guarantee is applicable to the states

9 through the due process clause of the Fourteenth Amendment.  Cole v. Arkansas, 333 U.S. 196,

10 201, 68 S.Ct. 514 (1948).

11    To show that a delay in adding a count to a charging document violated due

12 process, "(1) the defendant must prove actual, non-speculative prejudice from the delay; and (2)

13 the length of the delay, when balanced against the reason for the delay, must offend those

14 fundamental conceptions of justice which lie at the base of our civil and political institutions."

15 United States v. Talbot, 51 F.3d 183, 185-86 (9th Cir.1995); United States v. Huntley, 976 F.2d

16 1287, 1290 (9th Cir.1992).  In demonstrating actual prejudice, the defendant's burden is a heavy

17 one: the proof must be definite and not speculative, and the defendant must demonstrate how the

18 loss of a witness and/or evidence is prejudicial to his case. Talbot, 51 F.3d at 186 (citations

19 omitted).

20    In the instant case, petitioner has made no showing that he was prejudiced by the

21 amendment of the information approximately two years after the preliminary hearing.  Neither

22 the pleadings filed in support of the instant petition nor the motion to set aside the information

23 filed by petitioner's trial counsel contain a specific showing of prejudice.

24    The denial of this claim by the Superior Court was not an unreasonable

25 application of clearly established Supreme Court authority.  Accordingly, the claim should be

26 denied.

1        B. Jury Instruction Error

2        Petitioner raised this claim in a habeas petition filed in the Sacramento County

3   Superior Court. On February 8, 2007, the Superior Court issued an order denying this claim on

4   the merits. See exhibits attached to petition. The California Court of Appeal denied petitioner's

5   habeas corpus petition without comment or citation on June 7, 2007. Respondent's Lodged

6   Document 11. The California Supreme Court denied petitioner's habeas petition without

7   comment or citation. Respondent's Lodged Document 13. Accordingly, the court considers

8   whether the denial of this claim by the Superior Court was an unreasonable application of clearly

9   established Supreme Court authority.

10        Petitioner argues that the trial court violated his constitutional rights by refusing to

11   give a jury instruction on self defense/mutual combat. See CT at 378-380 (rejected instructions).

12   The Superior Court rejected this claim for the following reasons:

13             Petitioner also claims that the trial court erred in failing to give a mutual combat
               defense instruction, and that appellate counsel was ineffective in failing to raise
14             the matter on appeal.

15             Petitioner did not testify at trial, as was his choice under the Fifth Amendment.
               As such, his version of events was not in evidence before the jury, and only the
16             version of the witnesses, contrary to any mutual combat defense claim, was before
               the jury. As there was no evidence before the jury upon which a mutual combat
17             defense claim could have been based, there was no need to instruct on the matter.

18   See opinion of the Superior Court, attached as exhibit to petition.

19        "A defendant is not entitled to a jury instruction on a defense theory unless there

20   is some evidence before the jury to support it." United States v. Bowman, 720 F.2d 1103, 1105

21   (9th Cir.1983). This court has reviewed the record and finds no evidence that would have

22   supported a self-defense/mutual combat instruction. Petitioner argues that Corbin's use of the

23   pipe justified reading of the instructions. Corbin's use of the pipe in her own defense did not

24   warrant a reading of self-defense/mutual combat instructions. Even if viewed as mutual combat

25   between petitioner and Susan (a fact which would stretch the facts of this case), petitioner had a

26   duty to attempt to withdraw from any struggle before he could use self-defense. CALCRIM

1    3471.  This he unequivocally did not do.[2]

2    Petitioner also argues that the fact that the victim/witnesses all had criminal

3    records and admitted drug use justified a reading of the instruction.  This argument is without

4    merit.  For these reasons the trial court did not err by refusing to give the requested instruction.

5    The denial of this claim by the Superior Court was not an unreasonable

6    application of clearly established Supreme Court authority.  Accordingly, this claim should be

7    denied.

8    C.   Perjury/Brady Violation

9    Petitioner labels this claim as involving "nondisclosure, perjured testimony."

10   Petitioner contends that victims Oakley, Raynor and Corbin all had criminal charges dropped or

11   reduced or were put in drug rehabilitation in exchange for their cooperation with the prosecution.

12   Petitioner argues that any attempt to explore this topic in front of the jury was "quickly

13   suppressed."  Petitioner contends that the prosecution failed to disclose to his counsel that the

14   victims had received these benefits in exchange for their testimony.  Petitioner also suggests that

15   the victim witnesses lied about their deals during testimony.

16   Petitioner raised both of these claims in a habeas petition filed in the Sacramento

17   County Superior Court.  On February 8, 2007, the Superior Court issued an order denying these

18   claims on the merits.  See exhibits attached to petition.  The California Court of Appeal denied

19   petitioner's habeas corpus petition without comment or citation on June 7, 2007.  Respondent's

20   Lodged Document 11.  The California Supreme Court denied petitioner's habeas petition without

21   comment or citation.  Respondent's Lodged Document 13.  Accordingly, the court considers

22

23   [2]Nor is the exception to withdrawal from the struggle applicable here.  If one is the initial
     aggressor, but is only using non-deadly means by which the combat was initiated, and the non-
24   aggressor suddenly escalates the combat by means of using deadly force, the aggressor does not
     have to withdraw before he meets the deadly force with his own.  See bracketed paragraph in
25   CALCRIM 3471.  However, petitioner started the combat here with his use of deadly force (the
     knife).  There is no possible way Susan could be viewed as having herself elevated the level of
26   combat to deadly force.

1  whether the denial of these claims by the Superior Court was an unreasonable application of

2  clearly established Supreme Court authority.

3       The Superior Court denied these claims for the following reasons:

4       Petitioner also claims that he was convicted on the perjured testimony of the
        witnesses.  In support, he claims only that each's testimony was contradicted by

5       the testimony of the other witnesses, and that only his version of the events, to
        which he chose not to testify, is the truth.  He also claims ineffective assistance of

6       appellate counsel in failing to raise the matter on appeal.

7       Petitioner fails to show that the testimony of any of these witnesses was in fact not
        true and that the testimony of the contradicting witness was in fact true.  Rather,

8       petitioner merely points to typical discrepancies in the testimony of various
        witnesses that occurs at a large number of trials, discrepancies that are for the jury

9       to sort out.  Nor can he now attempt to give his own version of events, that he
        chose not to testify to during trial.  Petitioner fails to state a prima facie claim for

10      relief (Bowers, supra).

11      Petitioner also claims that the prosecutor failed to discover to the defense, before
        or during trial, exculpatory information that the prosecution witnesses had

12      criminal charges dropped against them, were placed in a drug rehabilitation
        program, and received consideration in return for their testimony.

13

14      Petitioner fails to attach any reasonably available documentary evidence to
        support his claim.  (In re Harris) (1993) 5 Cal.4th 813, 927 fn. 5).  Nor does he

15      attach a copy of the reporter's transcript of the trial testimony of each of these
        witnesses, to show none was ever impeached with the purported exculpatory

16      information.  Nor does petitioner show prejudice, as the jury was apprised that the
        two female witnesses were prostitutes and drug addicts and were participating in a

17      drug rehabilitation program, which already significantly affected their credibility
        which the jury chose to ignore.  And each's testimony was strongly against

18      petitioner and was not generally inconsistent with the other's or with that of the
        male witness on the main aspects of the crimes.  It does not appear that had the

19      alleged exculpatory information been introduced at trial that it would have been
        reasonably likely to have made a difference in the outcome.  As such, the claim is

20      denied.

21  See opinion of the Superior Court, attached as exhibit to petition.

22       This court first considers petitioner's claim that the prosecution failed to disclose

23  to the defense evidence that in exchange for their testimony, the victims had criminal charges

24  dropped and were put into drug rehabilitation programs.

25       In criminal cases, the prosecution has a duty to disclose all material evidence that

26  is favorable to the accused.  Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963).  This

11

1  duty extends not only to exculpatory evidence but also to "evidence that the defense might have

2  used to impeach the Government's witnesses by showing bias or interest."  United States v.

3  Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375 (1985).  Evidence is material if "there is a reasonable

4  probability that, had the evidence been disclosed to the defense, the result of the proceeding

5  would have been different." Id. at 682, 105 S.Ct. 3375.

6         Evidence that the prosecutor in petitioner's case made a deal with the victims in

7  exchange for their testimony would have been material.  See Giglio v. United States, 405 U.S.

8  150, 154-55, 92 S.Ct. 763 (1972) (finding that undisclosed deal with key prosecution witness was

9  material non-disclosure).  In the petition, petitioner presented no evidence demonstrating that

10 such deals existed.  Petitioner cited to various places in the record as demonstrating the trial

11 judge's refusal to allow defense counsel to question the victims regarding the matter, somewhat

12 contradicting his claim that the prosecution failed to disclose evidence of the deal.

13        In the petition, petitioner cited RT 69-70, 129-130, 148, 230, where Oakley and

14 Corbin testified that they were in drug rehabilitation programs.  Petitioner cited RT 184: 3–14

15 and 197:16-28 as demonstrating that any attempt by defense counsel to question them regarding

16 their deals was suppressed by the court.  At page 184, defense counsel cross-examined Corbin:

17        Q: Now, you say you have been in drug treatment since November?
       A: No, I have been in drug treatment since August.  I have been in the transitional
18     since November.
       Q: Since August?
19     A: Yes.
       Q: Is the reason that you went into treatment in August because you were ordered
20     to as part–
       Prosecutor: Objection, relevance.
21     Court: No, no, come on.  I'm going to sustain it.

22 RT at 184.

23        The trial court had previously ruled that defense counsel could impeach the

24 witnesses with their prior convictions involving moral turpitude.  RT at 44-48.  In making this

25 ruling, the trial court found that the victims' prior convictions involving drug offenses generally

26 did not involve moral turpitude.  RT at 44.  It appears that in sustaining the objection to defense

12

counsel's question regarding why Corbin was in drug treatment, the trial court was seeking to

prevent impeachment of Corbin with a prior drug conviction as it did not involve moral

turpitude.

At page 197 defense counsel cross-examined Oakley:

Q: You have been in drug programs before: isn't that right?
A: No.
Prosecutor: Objection, relevance.
Court: Well, she stated no.
Q: When I'm speaking of a drug program, I'm also including classes that you
might have taken?
Court: You all come on up here and let me hear about it.
(Whereupon a discussion was had at the bench between the Court and counsel.)
Court: The objection is sustained.

RT at 197-198.

In sustaining the objection to defense counsel's questions to Oakley regarding her

participation in drug treatment, it appears that the court was seeking to prevent Oakley's

impeachment with a prior drug conviction as it did not involve moral turpitude.

On June 11, 2009, the court granted petitioner fifteen days to submit any evidence

in his possession supporting his Brady claim.  On June 22, 2009, petitioner filed a supplemental

brief in support of his Brady claim.  Attached as exhibits are portions of a motion apparently filed

by the prosecution requesting limited impeachment of the victim/witnesses based on their prior

convictions.  The motion lists the prior convictions of the victim/witnesses and argues that most

of these convictions do not qualify as crimes of moral turpitude and, thus, should not be

mentioned by any party during the trial.  This motion supports this court's interpretation of the

testimony quoted above that trial counsel was not permitted to cross-examine the

victim/witnesses about their prior convictions as they did not involve crimes of moral turpitude.

The court has reviewed the other documents attached to petitioner's supplemental

briefing and does not find that any of these papers demonstrate that any victim/witness was

offered a deal in exchange for their testimony.  Because this claim is not supported by the record,

it should be denied.

1        Turning to petitioner's claim that the victims committed perjury, the United States

2   Supreme Court "has long held that a conviction obtained using knowingly perjured testimony

3   violates due process." Jackson v. Brown, 513 F.3d 1057, 1071-1072 (9th Cir.2008) (citing

4   Mooney v. Holohan, 294 U.S. 103, 112 (1935)). See also Napue v. Illinois, 360 U.S. 264, 79

5   S.Ct. 1173 (1959); Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir.2004) ("The

6   government's knowing use of perjured testimony to obtain a conviction violates a defendant's

7   right to due process of law.")

8        A claim for habeas relief based upon the alleged use of perjured testimony to

9   obtain a conviction will only succeed when "(1) the testimony (or evidence) was actually false,

10  (2) the prosecution knew or should have known that the testimony was actually false, and (3) the

11  false testimony was material." Jackson, 513 F.3d at 1071-72 (quoting Hayes v. Brown, 399 F.3d

12  972, 984 (9th Cir.2005)). "The essence of the due process violation is misconduct by the

13  government, not merely perjury by a witness." Morales, 388 F.3d at 1179.

14       Petitioner cites no actual instance of alleged perjury by any of the victims. In

15  addition, the record contains no evidence that the prosecution knew that any of the testimony of

16  the victims was false. For these reasons, this claim is without merit.[3]

17       For the reasons discussed above, the court finds that the denial of these claims by

18  the Superior Court was not an unreasonable application of clearly established Supreme Court

19

20        [3] In finding no evidence of perjury, this court observes that the three victim witnesses
    testified somewhat candidly regarding their prior criminal histories and drug use. Oakley and
21  Corbin testified that they were former prostitutes. RT at 68, 129. Oakley testified that she had
    been "caught" prostituting 27 times. RT at 206. Corbin admitted a 1987 forgery conviction and
22  numerous convictions for prostitution. RT at 177-178. Corbin testified that she used to use
    marijuana, crack, crank and methamphetamine. RT at 149. Oakley testified that she had
23  previously used marijuana, methamphetamine and crack. RT at 190. Corbin also testified that
    she allowed people to use her trailer to do drugs. RT at 156. Raynor testified that at the time of
24  the incident, he used crack. RT at 229. Raynor also testified that he had been recently caught
    stealing alcohol from a Dollar Tree store. RT at 234. That the victim/witnesses did not attempt
25  to hide these less favorable aspects of their personal histories makes petitioner's perjury claim
    less credible.

26

1    authority.  Accordingly, these claims should be denied.

2                    D.  Ineffective Assistance of Appellate Counsel

3                Petitioner raised this claim in a habeas petition filed in the Sacramento County

4    Superior Court.  On February 8, 2007, the Superior Court issued an order denying this claim on

5    the merits.  See exhibits attached to petition.  The California Court of Appeal denied petitioner's

6    habeas corpus petition without comment or citation on June 7, 2007.  Respondent's Lodged

7    Document 11.  The California Supreme Court denied petitioner's habeas petition without

8    comment or citation.  Respondent's Lodged Document 13.  Accordingly, the court considers

9    whether the denial of this claim by the Superior Court was an unreasonable application of clearly

10   established Supreme Court authority.

11               *Legal Standard*

12               A claim of ineffective assistance of appellate counsel utilizes the same Strickland

13   standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746,

14   765 (2000).

15               The test for demonstrating ineffective assistance of counsel is set forth in

16   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

17   that, considering all the circumstances, counsel's performance fell below an objective standard of

18   reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

19   identify the acts or omissions that are alleged not to have been the result of reasonable

20   professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine

21   whether in light of all the circumstances, the identified acts or omissions were outside the wide

22   range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that

23   counsel's conduct was within the wide range of reasonable assistance, and that he exercised

24   acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

25   695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

26   \\\\\

1    Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

2  693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for

3  counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

4  694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

5  confidence in the outcome."  Id., 104 S. Ct. at 2068.

6    In extraordinary cases, ineffective assistance of counsel claims are evaluated

7  based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

8  1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

9    *Analysis*

10    Petitioner argues,

11    Richard Power as appointed counsel failed to meet minimum standard of effective
      counsel.  In a case virtually bristling with appellate errors, Mr. Richard Power

12    could find no appeal issues.  In a case with two hookers and a drunk (RT 69, 128)
      (RT 229-230) running a crack house (RT 155-156).

13

14  Petition, p. 6.

15    In the reply to the answer, petitioner argues that appellate counsel should have

16  challenged on appeal the amended information adding the Corbin charges, the failure of the trial

17  court to give the self-defense/mutual combat jury instructions, and the failure of the prosecution

18  to disclose the deals with the victim witnesses.

19    As discussed above, the Superior Court issued a reasoned opinion rejecting

20  petitioner's claims challenging the amended information, the jury instructions and the failure of

21  the prosecution to disclose deals with the victim witnesses.  Because the Superior Court rejected

22  these claims on the merits, it is not likely that appellate counsel would have been more successful

23  had he raised these claims on appeal.

24    Because the denial of this claim by the Superior Court was not an unreasonable

25  application of clearly established Supreme Court authority, this claim should be denied.

26  \\\\\

16

E. <u>Apprendi/Blakely/Cunningham</u>

Petitioner argues that his sentence was imposed in violation of <u>Apprendi</u>, <u>Blakely</u> and <u>Cunningham</u>.  In particular, petitioner alleges that the upper term for count 3 violated <u>Apprendi</u>, etc.  Petitioner also alleges the trial court doubled his sentence for count 3 pursuant to Cal. Penal Code § 667(e)(1) in violation of <u>Apprendi</u>, <u>supra</u>.  Finally, petitioner alleges that the additional five year sentence he received pursuant to Cal. Penal Code § 667(a) violated <u>Apprendi</u>, etc.

In their brief in response to this claim filed March 18, 2009, respondent first argues that this claim is barred by the statute of limitations and fails to relate back to the original timely petition.

At the outset, the court observes that the original petition raised only four claims: 1) violation of the right to a preliminary hearing; 2) jury instruction error; 3) ineffective assistance of appellate counsel; and 4) conviction obtained by use of perjured testimony. However, attached to the petition as exhibits were two orders by the Sacramento County Superior Court.  One of these orders denied petitioner's habeas petition raising these four claims.  The other order denied petitioner's habeas petition raising his <u>Apprendi</u>, etc. claim.  The court does not find that by attaching a copy of this order by the Superior Court  petitioner raised this claim in the original federal petition.

Because petitioner did not raise the <u>Apprendi</u>, etc. claim in the original federal petition, the court now considers whether petitioner's <u>Apprendi</u>, etc. claim raised in the January 28, 2009, reply is barred by the statute of limitations.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion

17

1   of direct review or the expiration of the time for seeking such
    review;

2

3   (B) the date on which the impediment to filing an application
    created by State action in violation of the Constitution or laws of
    the United States is removed, if the applicant was prevented from
4   filing by such State action;

5   (C) the date on which the constitutional right asserted was initially
    recognized by the Supreme Court, if right has been newly
6   recognized by the Supreme Court and made retroactively
    applicable to cases on collateral review; or

7
    (D) the date on which the factual predicate of the claim or claims
8   presented could have been discovered through the exercise of due
    diligence.

9

10      The California Supreme Court denied petitioner's petition for review on April 12

11  5, 2006.  Respondent's Lodged Document 9.  Petitioner's conviction became final 90 days later

12  on July 11, 2006, when the time to file a petition for writ of certiorari in the United States

13  Supreme Court expired.  Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999).  Petitioner had one year

14  from that date, i.e. until July 11, 2007, to file a federal petition raising his Apprendi, etc. claim.

15  The Apprendi, etc. claim, raised on January 28, 2009, is not timely unless petitioner is entitled to

16  statutory or equitable tolling.

17      Although not directly raised by petitioner, the court addresses the issue of whether

18  a later trigger date for the statute of limitations runs from the date Cunningham was decided

19  pursuant to 28 U.S.C. § 2244(d)(1)(C).  In Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008) the

20  Ninth Circuit concluded that Cunningham did not announce a new rule:

21      Apprendi, Blakely and Booker made "courts throughout the land' aware that
        sentencing schemes that raise the maximum possible term based on facts not
22      found by a jury violate the constitutional rights of defendants. [Citation omitted.]
        No principles of comity or federalism would be served by refusing to apply this
23      rule to functionally indistinguishable state sentencing schemes on collateral
        review.  Cunningham thus did not announce a new rule of constitutional law and
24      may be applied retroactively on collateral review.

25

26  Butler, 528 F.3d at 639.

18

In <u>Butler</u>, 528 F.3d at 634 n. 9, the Ninth Circuit identified the key question:

> Whether Butler asks us to apply to him a Supreme Court decision issued after his conviction became final, or to announce the very holding that the Supreme Court arrived at in a case decided after his conviction became final, we must determine whether the result he requests was "dictated" by precedent before his conviction was final.  <u>See</u> Caspari v. Bohlen, 510 U.S. 383, 395-96, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)(determining whether the result that the petitioner was arguing for in his collateral review proceeding would require creation of a new rule in violation of <u>Teague</u>).  The pivotal question is thus the same either way: did <u>Apprendi</u>, <u>Blakely</u> or <u>Booker</u> compel the conclusion that California's DSL law violates the Sixth Amendment?

In <u>Butler</u>, the Ninth Circuit found that <u>Cunningham</u> was "clearly dictated by the Supreme Court's Sixth Amendment case law, in particular <u>Blakely</u> ...".  528 F.3d at 628. Pursuant to <u>Butler</u>, the statute of limitations for a <u>Cunningham</u> claim does not run from the date on which <u>Cunningham</u> became final because the constitutional right was not "newly recognized" by the Supreme court.  28 U.S.C. § 2241(d)(1)(c).

28 U.S.C. § 2254(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Petitioner filed three habeas corpus petitions in the California Court of Appeal in late 2005.  <u>See</u> Respondent's Lodged Documents 5-7.  These petitions were denied on November 10, 2005 (lodged doc. 5,), December 1, 2005 (lodged doc. 6), and December 1, 2005 (lodged doc. 7).  Because these petitions were filed and denied before petitioner's conviction became final, the court does not consider these petitions in calculating statutory tolling.

Petitioner filed his first post-conviction state habeas petition in the California Supreme Court on May 4, 2006, raising his perjury/<u>Brady</u> error claim.  Respondent's Lodged Document 10.  This petition did not raise petitioner's <u>Apprendi</u>, etc. claim.  On November 29, 2006, the California Supreme Court denied the petition without comment or citation.  <u>Id.</u> Although the petition was filed before petitioner's conviction became final, it was denied during

1   the one year statute of limitations period.  Accordingly, petitioner is entitled to statutory tolling

2   for this petition.

3            On January 30, 2007, petitioner filed a habeas corpus petition in Sacramento

4   County Superior Court raising all of the claims raised in this action but for the <u>Apprendi</u>, etc.

5   claim.  A file stamped copy of this petition is attached to a document lodged by respondent

6   labeled as "Exhibit A."   The Superior Court denied the petition on February 8, 2007.  <u>See</u>

7   Exhibits attached to petition.  At some later time, petitioner filed a request for reconsideration of

8   the order by the Superior Court denying his petition, in which he sought to add his <u>Apprendi</u>, etc.

9   claim.  Respondent's Lodged Document 12.  <u>Id.</u>  On March 15, 2007, the Superior Court granted

10  the request for reconsideration for the sole purpose of allowing petitioner to bring his <u>Apprendi</u>,

11  etc. claim.  Respondent's Lodged Document 12.  The Superior Court also appointed counsel to

12  represent petition.  <u>Id.</u>  On July 25, 2007, the Superior Court denied petitioner's habeas corpus

13  petition.  Respondent's Lodged Document 12.

14           On April 11, 2007, petitioner filed a habeas corpus petition in the California Court

15  of Appeal raising all of the claims raised in this action, including the <u>Apprendi</u>, etc. claim.

16  Respondent's Lodged Document 11.  On June 7, 2007, the California Court of Appeal denied

17  this petition.  <u>Id.</u>

18           On January 8, 2008, petitioner filed a habeas corpus petition in the California

19  Supreme Court raising all of the claims raised in the instant petition.  Respondent's Lodged

20  Document 13.  On July 9, 2008, the California Supreme Court denied this petition.  <u>Id.</u>

21           While statutory tolling may be available for intervals between ascending filings

22  (ie. from Superior Court, to the Court of Appeal, to the Supreme Court), it is not available for the

23  interval between descending filings, unless a petitioner is attempting to remedy a deficiency in

24  the new filing.  <u>King v. Roe</u>, 340 F.3d 821, 823 (9th Cir.2003).  Accordingly, petitioner is not

25  entitled to interval tolling for the time between when the California Supreme Court denied his

26  first petition and when he filed his petition in the Superior Court because he was not attempting

1   to cure a deficiency.  Therefore, for his first petition filed in the California Supreme Court,

2   petitioner is entitled to statutory tolling of 209 days, i.e. May 4, 2006, to November 29, 2006.

3            For his second round of state habeas petitions, petitioner is entitled to statutory

4   tolling from January 30, 2007, to July 9, 2008, i.e. for 526 days.[4]  Carey v. Saffold, 536 U.S. 214,

5   215, 122 S.Ct. 2134 (2002) (the statute of limitations is tolled during the pendency of a "properly

6   filed" state court petition and during intervals between a state court's disposition of a state court

7   petition and the filing of a new, "properly filed" petition at the next level of state court review).

8            Petitioner is entitled to 735 days of statutory tolling.  Adding 735 days to the date

9   the statute of limitations ran on July 11, 2007, would make petitioner's federal petition due on

10  July 11, 2009.  Accordingly, petitioner's Apprendi, etc. claim is not barred by the statute of

11  limitations.  The court now addresses the merits of this claim.

12           On March 25, 2005, petitioner was sentenced to 15 years.  The court sentenced

13  petitioner to 8 years for count three, assault with a deadly weapon.  Reporter's Supplemental

14  Transcript, p. 6.  In imposing this sentence, the court imposed the upper term of 4 years because

15  petitioner was on parole at the time he committed the offense.  Id. at 6.  The court then doubled

16  this sentence to 8 years pursuant to the Three Strikes Law, Cal. Penal Code § 667(e)(1).  Id.

17           Petitioner argues that the upper term imposed for count three violated Apprendi,

18  etc.  In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000), the Supreme Court

19  held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

20  crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

21  a reasonable doubt."  The "statutory maximum" for Apprendi purposes is the maximum sentence

22  a judge could impose based solely on the facts reflected in the jury verdict or admitted by the

23  defendant.  See Blakely v. Washington, 542 U.S. 296, 303-04, 124 S.Ct. 2531 (2004).

24  \\\\\

25  _____

26           [4]  Respondent does not argue that any of the state habeas petitions were not properly filed
    pursuant to 28 U.S.C. § 2244(d).  Accordingly, the court will address this issue.

1    In Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 871 (2007), the

2  Supreme Court found that the middle term in California's sentencing scheme was the statutory

3  maximum for purposes of analysis under Apprendi, and that state trial courts were barred from

4  imposing a sentence beyond the middle term based on any fact that was not determined by a jury

5  and proven beyond a reasonable doubt.  There is a narrow exception to this rule, however, for

6  enhancements that are based on prior convictions; these need not be submitted to the jury. See

7  Almendarez-Torres v. United States, 523 U.S. 224, 244, 118 S.Ct. 1219 (1998); Butler, 528 F.3d

8  at 641 ("[T]o hold that the Constitution requires that recidivism be deemed an 'element' of

9  petitioner's offense would mark an abrupt departure from a longstanding tradition of treating

10  recidivism as 'go[ing] to punishment only.' ").

11    In the instant case, the trial court imposed the upper term based on a factor other

12  than a prior conviction, i.e. that petitioner was on parole at the time he committed the crimes.

13  Butler, 528 F.3d at 643 (probationary status was fact in aggravation for upper term, and should

14  have been submitted to the jury).  Therefore, Apprendi, etc. error occurred because a jury did not

15  make this finding.  However, the Apprendi, etc. error was harmless.  See Washington v.

16  Recuenco, 548 U.S. 212, 221-22, 126 S.Ct. 2546 (2006) (holding Blakely errors are not structural

17  and are subject to harmless error analysis). To grant relief, this court must have "grave doubt" as

18  to whether a jury would have found any of the relevant aggravating factors beyond a reasonable

19  doubt.  Butler, 528 F.3d at 648.  Here, petitioner does not seriously dispute that he was on parole

20  at the time of the offense.  The trial court relied on the probation report in making this finding.

21  CT at 474 (probation report).  For these reasons, this court does not have grave doubt that the

22  jury would not have found that petitioner was on parole at the time he committed these offenses.

23  Therefore, the Apprendi, etc. error was harmless.[5]

24  _____

25    [5] In the supplemental pleading, respondent urges the court to adopt the reasoning used by
the Superior Court in denying this claim.  The Superior Court found that the probation report also
found that an upper term was warranted based on petitioner's numerous prior convictions.

26  Respondent's Lodged Document 12.  Because the sentencing court could have relied on the prior

1    Petitioner also argues that the doubling of his sentence for count three violated

2    Apprendi, etc.  The trial court doubled his sentence pursuant to Cal. Penal Code § 667(e)(1)

3    which provides, "[i]f a defendant has one prior felony conviction that has been pled and proved,

4    the determinate term or minimum term for an indeterminate term shall be twice the term

5    otherwise provided as punishment for the current felony conviction."  This claim fails because

6    the doubling of his sentence was based on a prior conviction, a fact which need not be found by a

7    jury.  Apprendi, 530 U.S. at 476, 120 S.Ct. 2348.

8    Finally, petitioner alleges that the additional five year sentence he received

9    pursuant to Cal. Penal Code § 667(a) violated Apprendi, etc.  Cal. Penal Code § 667(a) provides,

10   In compliance with subdivision (b) of Section 1385, any person convicted of a
     serious felony who previously has been convicted of a serious felony in this state
11   or of any offense committed in another jurisdiction which includes all of the
     elements of any serious felony, shall receive, in addition to the sentence imposed
12   by the court for the present offense, a five-year enhancement for each such prior
     conviction on charges brought and tried separately. The terms of the present
13   offense and each enhancement shall run consecutively.

14   Cal. Penal Code § 667(a)(1).

15   In order for a court to impose a five year sentence enhancement pursuant to §

16   667(a)(1), it must find that the prior felony conviction was a *serious* felony as defined by state

17   law.  See Cal. Penal Code § 667(a).  Whether the trial court's finding that the prior conviction

18   was a *serious* felony falls out of the prior conviction exception to Apprendi is unclear.  Assuming

19   it does, the court finds any error to be harmless.

20   According to the probation report, on which the sentencing judge relied, petitioner

21   had a prior conviction for attempted murder, which was a serious felony as defined by California

22   law.  See CT at 465.  For this reason, the court does not have grave doubt that the jury would not

23   have found that petitioner's prior felony conviction was a serious felony.  Accordingly, any

24

25   convictions to sentence petitioner to the upper term, the Superior Court found no Apprendi, etc.
     error.  This court does not agree with the reasoning of the Superior Court because the sentencing
26   court did not actually rely on the prior convictions in sentencing petitioner to the upper term.

1  <u>Apprendi</u>, etc. error was harmless.

2         After conducting the AEDPA review, the court finds that petitioner's <u>Apprendi</u>,

3  etc. claims should be denied.

4         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

5  a writ of habeas corpus be denied.

6         These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: 07/23/09

15                                                    /s/ Gregory G. Hollows

                                                      _____
16  vad178.157                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26